RECORD NO. 15-1989

IN THE

# United States Court of Appeals
### FOR THE FOURTH CIRCUIT

DIANNE L. BUTTS,

*Plaintiff – Appellant,*

v.

PRINCE WILLIAM COUNTY SCHOOL BOARD,

*Defendant – Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
AT ALEXANDRIA

**OPENING BRIEF OF APPELLANT
DIANNE L. BUTTS**

Matthew B. Kaplan
KAPLAN LAW FIRM
509 North Jefferson Street
Arlington, VA 22205
(703) 665-9529
mbkaplan@thekaplanlawfirm.com

*Counsel for Appellant*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 15-1989     Caption: Dianne L. Butts v. Prince William Co School Board

Pursuant to FRAP 26.1 and Local Rule 26.1,

Dianne L. Butts
(name of party/amicus)

who is _____ Appellant _____ , makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                  ☐ YES ☑ NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
      other publicly held entity?                                      ☐ YES ☑ NO
      If yes, identify all such owners:

08/05/2015 SCC                          - 1 -

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
       financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
       If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
       If yes, identify any publicly held member whose stock or equity value could be affected
       substantially by the outcome of the proceeding or whose claims the trade association is
       pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
       If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Matthew B. Kaplan                    Date:    9/28/15

Counsel for: Dianne L. Butts

### CERTIFICATE OF SERVICE
**************************

I certify that on        9/28/15        the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

n/a -- all parties on ECF

/s/Matthew B. Kaplan                                9-28-2015
        (signature)                                    (date)

- 2 -

## **TABLE OF CONTENTS**

**CORPORATE DISCLOSURE**

**TABLE OF CONTENTS** ........................................................................ i

**TABLE OF AUTHORITIES** ................................................................ ii

**JURISDICTIONAL STATEMENT** ....................................................1

**STATEMENT OF ISSUES PRESENTED FOR REVIEW** ................1

**STATEMENT OF THE CASE** ...........................................................2

    **Factual Background** ....................................................................... 2

    **Procedural Background** ..................................................................7

**SUMMARY OF ARGUMENT** ..........................................................8

**ARGUMENT** ...................................................................................10

    **I.   Standard of Review** ..............................................................10

    **II.  USERRA's Protections Are Interpreted Expansively** ......10

    **III. PWCS Violated USERRA's Reemployment Provision** ....12

        A. A Returning Employee Is Entitled to an Appropriate
            Reemployment Position ...............................................12

        B. Butts was Never Rehired in an Appropriate Reemployment
            Position ........................................................................16

        C. Nothing in *Francis v. Booz, Allen & Hamilton, Inc.* is to the
            Contrary .......................................................................18

        D. A Factfinder Could Reasonably Conclude that PWCS Caused
            Butts' Inability to Work ..............................................21

**CONCLUSION** ................................................................................24

**REQUEST FOR ORAL ARGUMENT** .............................................25

**CERTIFICATE OF SERVICE** .........................................................26

# TABLE OF AUTHORITIES

**Cases**

*Alabama Power Co. v. Davis,*
    431 U.S. 581 (1977) ......................................................................11

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) ......................................................................10

*Ausherman v. Bank of America Corp.,*
    352 F.3d 896 (4th Cir. 2003)......................................................10

*Canal Insurance Co. v. Distribution. Services, Inc.,*
    320 F.3d 488 (4th Cir. 2003)......................................................10

*Fishgold v. Sullivan Drydock & Repair Corp.,*
    328 U.S. 275 (1946) ......................................................................11

*Francis v. Booz, Allen & Hamilton, Inc.,*
    452 F.3d 299 (4th Cir. 2006)............................... 11, 12, 18, 19, 20

*Hamovitz v. Santa Barbara Applied Research, Inc.,*
    2:07-cv-0454, 2010 U.S. Dist. LEXIS 110937
    (W.D. Pa. Oct. 19, 2010)....................................................... 22-23

*Hembree v. Georgia Power Co.,*
    637 F.2d 423 (5th Cir. Unit B 1981).............................................16

*Henry v. Purnell,*
    652 F.3d 524 (4th Cir. 2011)......................................................10

*Hill v. Michelin North America, Inc.,*
    252 F.3d 307 (4th Cir. 2001)......................................................11

*Montoya v. Orange County Sheriff's Dep't,*
    SACV 11-1922, 2014 U.S. Dist. LEXIS 160414
    (C.D. Cal. Nov. 13, 2014) ...................................................... 23, 24

*Morris-Hayes v. Bd. of Educ.,*
    423 F.3d 153 (2d Cir. 2005)......................................................19

*Petty v. Metropolitan Government of Nashville*, 687 F.3d 710
    (6th Cir. 2012) ...................................................................13

*Robinson v. Shell Oil Co.*,
    519 U.S. 337, 341 (1997) ..............................................18

*United States v. Andrews*,
    441 F.3d 220 (4th Cir. 2006).........................................18

**Statutes**

28 U.S.C. § 1291 ...............................................................1

28 U.S.C. § 1331 ...............................................................1

38 U.S.C. § 4301 ...................................................... 1, 10, 11

38 U.S.C. § 4304 ...............................................................13

38 U.S.C. § 4311 ...................................................... 11, 12, 20

38 U.S.C. § 4312 ...................................................... 12, 13, 20

38 U.S.C. § 4313 ............................................ 12, 13, 14, 15, 16, 20, 21

38 U.S.C. § 4316 ...............................................................20

38 U.S.C. § 4323 ...............................................................22

**Rules**

20 C.F.R. § 1002.2 ...........................................................11

20 C.F.R. § 1002.191 .........................................................14

20 C.F.R. § 1002.192 .........................................................14

20 C.F.R. § 1002.197 ................................................... 16, 17

20 C.F.R. § 1002.25 ...........................................................15

E.D. Va. Civ. R. 56(B) .......................................................2

## JURISDICTIONAL STATEMENT

The district court had jurisdiction over Plaintiff's Complaint pursuant to 28 U.S.C. § 1331 as a matter of federal question jurisdiction. On July 31, 2015, the district court entered an order granting summary judgment in favor of Defendant. Plaintiff timely appealed. This Court now has jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

Plaintiff-Appellant Dianne Butts presents the following issues for review:

- Whether Butts presented evidence which would allow a reasonable factfinder to conclude that Defendant-Appellee's conduct towards her constituted a violation of the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), 38 U.S.C. § 4301 *et. seq.*

- Whether Butts is entitled to recover damages proximately caused by Defendant-Appellee's violation of USERRA.

## STATEMENT OF THE CASE

Factual Background

Plaintiff-Appellant Dianne Butts, who had served as an active duty officer in the United States Army, was hired by Defendant-Appellee Prince William County School System ("PWCS") in 1996 via the Troops to Teachers program, a Department of Defense program that assists military service members to transition to careers as public school teachers. JA 63 (Facts ¶ 1).[1] At the time Butts was hired she had a Master's Degree in Education and a certification from the Virginia Department of Education to teach the third through sixth grade and was assigned to teach fifth grade. *Id.* By the 1999-2000 school years she had successfully completed her probationary period and, consequently, pursuant to Virginia law, could only be dismissed for "for cause." *Id.* (Facts ¶ 2). Butts received satisfactory "effective" ratings in each of her performance evaluations through 2004. JA 64 (Facts ¶ 3).

Butts continued teaching the fifth grade until the fall of 2004 when, as an army reservist, she was ordered to report to active duty. *Id.* (Facts ¶ 4). She was

---

[1] Citations in the format "JA [page]" refer to the Parties' Joint Appendix. Citations to "Facts ¶ [number]" refer to specific paragraphs of PWCS' Statement of Material Facts Not in Dispute (JA 63-75). The Local Rules of the Eastern District of Virginia require that a party moving for summary judgment provide the court with such a statement of undisputed material facts. E.D. Va. Civ. R. 56(B).

2

deployed to Kuwait, returning to the U.S. in May 2008 and being discharged from active duty in November 2008 with the rank of lieutenant colonel. *Id.* (Facts ¶ 5).

Butts suffered mental health issues during this period of active duty service. In September 2008, an army psychologist "diagnosed Butts as suffering from adjustment disorder with depressed mood," in part because of suicides of military personnel that she was exposed to while overseas. *Id.*

In June of 2008, prior to her discharge from the army, Butts raised the issue of returning to PWCS employment with Dr. Michael Mondak, Supervisor for Elementary and Special Education Personnel in the PWCS Department of Human Resources. JA 63-64 (Facts ¶ 6). Although Mondak knew that Butts had been serving in the army, and despite the fact that PWCS was obligated to rehire Butts pursuant to USERRA, Mondak told Butts that she must apply for work through PWCS' "new online application system." *Id.* Although Mondak was apparently familiar with USERRA, according to PWCS "he did not realize [Butts] intended to seek reemployment under USERRA." *Id.*

Following her November honorable discharge from the army, and in accordance with Mondak's instructions, in January 2009 Butts applied for several PWCS jobs using the same process as would any first-time applicant for a PWCS position. JA 65 (Facts ¶ 8). Despite her pre-military service position as a tenured elementary school teacher, Butts was hired as an elementary school long-term

substitute teacher on February 26, 2009. JA 65-66 (Facts ¶ 9). Serious performance issues immediately came to light indicating that Butts incapable of returning to teaching. Among the problems noted by Butts' supervisors was that "Butts … spoke to the students in a disrespectful or harsh manner and refused to teach pursuant to PWCS lesson guides or established practices, leading to confusion among students assigned to her class." *Id.* Because of these performance issues, Butts was effectively fired after less than a week on the job. *Id.*

Butts then contacted "an ombudsman with the DOD's Employer Support of the Guard and Reserve ('ESGR'), to seek assistance in obtaining reemployment with PWCS." JA 66 (Facts ¶ 11). Upon the ombudsman's recommendation Butts sent PWCS a letter affirmatively asserting that she was seeking reemployment pursuant to USERRA. *Id.* On April 27, 2009 "Butts was reinstated as a continuing contract teacher" with, according to PWCS, "the same salary and benefits to which she would have been entitled had she never … been absent on military leave from 2004 to 2008." JA 67 (Facts ¶ 13). Apparently recognizing that it had violated USERRA, PWCS also paid Butts "a salary" for the 2008-2009 school year. *Id.*

Butts was assigned to provide pull-out math instruction to fifth grade students at Sinclair elementary school. JA 262. However, Butts' inability to perform the functions of an elementary school teacher was again immediately

4

apparent.  JA 68 (Facts ¶ 16).  According to PWCS "Butts' methodologies were ineffective and sometimes incorrect" and, as a result, "[s]tudents often returned to their base classrooms more confused" then when they had gone to see Butts.  *Id.* At the end of the school year Sinclair's principal asked that she not be returned to the school for the following year and that request was complied with.  JA 68-69 (Facts ¶ 18).

At the beginning of the next school year PWCS assigned Butts as a fourth grade teacher at Montclair Elementary School.  JA 69 (Facts ¶ 19).  However, "[e]arly in the 2009-2010 school year, during informal observations, Montclair's administrators noticed deficiencies in Butts' performance inconsistent with the performance standards under which Virginia teachers are evaluated."  JA 69-70 (Facts ¶ 21).  Consequently, Montclair's assistant principal developed an "action plan" "designed to assist Butts in correcting those performance deficiencies."  *Id.* PWCS also assigned Butts a mentor and provided her with other assistance.  *Id.* Butts, however, "did not meet all of her action plan objectives by the start of the second quarter of the school year" and received "Needs Improvement" ratings on her mid-year performance evaluation.  JA 70 (Facts ¶ 22).  Butts was advised "that improvement was needed or discharge was possible."  *Id.*  "In light of Butts' continued resistance to the action plan requirements, failure to meet performance standards, and the receipt of multiple parental complaints concerning the quality of

5

instruction and Butts' treatment of students assigned to her classroom" Montclair's principal recommended that Butts be dismissed. *Id.* (Facts ¶ 23). Subsequently, Todd Erickson, PWCS' Associate Superintendent for Central Elementary Schools, "personally observed one of Butts' classes" and found that her teaching reflected a "lack of planning, organization, and general unpreparedness for class." *Id.* Erickson nevertheless decided not to dismiss Butts and instead assigned her to continue as a teacher at Montclair elementary for the 2010-11 school year. *Id.* ¶ 24.

At the beginning of the 2010-11 school year Butts was subject to a formal "Professional Improvement Plan ('PIP') to address the ongoing concerns with [her] work performance." JA 71 (Facts ¶ 26). Nevertheless, "[d]uring the beginning of the 2010-2011 school year, Montclair continued to receive parental complaints regarding Butts' treatment of their children, and Butts continued to display other behaviors and conduct that failed to meet performance standards." *Id.* At no point was Butts offered a non-teaching position at PWCS. JA 328-29.

On October 10, 2010, Butts submitted a request to take long-term sick leave "'to help her recover from stress[,]' as she had 'been experiencing a lot of anxiety, depressed mood, and intrusive thoughts of her time serving in the military.'" *Id.* (Facts ¶ 27). Butts indicated that "[t]his condition started approximately July 2008 upon completion of two deployments," with the military (emphasis omitted). *Id.*

6

Butts never returned to work. PWCS fired her on June 15, 2011. JA 72 (Facts ¶ 30).

Butts has now been diagnosed with Post-Traumatic Stress Disorder ("PTSD") and other mental health disabilities and is currently completely unable to work in any capacity. JA 73 (Facts ¶ 34).

Procedural Background

Plaintiff initially filed her complaint *pro se* in the Court of Federal Claims. JA 2 (dkt. 14). It was transferred to the United States District Court for the Eastern District of Virginia in August 2014. *Id.* Claims that Butts had brought against senior managers of PWCS and on legal theories other than USERRA violations were dismissed in the court below and are not at issue in this appeal.

After discovery concluded PWCS moved for summary judgment.[2] PWCS argued that it had met its USERRA obligations to Butts when it rehired her as a permanent contract teacher in April 2009 and paid her back wages for the entire 2008-09 school year. Butts responded that PWCS had not complied with USERRA because it had never reemployed her in a position for which she was qualified. At the conclusion of a July 31, 2015 hearing on the summary judgment motion the district court granted PWCS' motion and dismissed the case. JA 342.

---

[2] Butts also filed a Motion for partial summary judgment, which the district court rejected. That Motion is not at issue in this appeal.

The district court did not issue a written opinion in this matters and its explanation

from the bench as to why it granted PWCS' motion was sparse:

> I do not find that the plaintiff has produced evidence that would support either of her claims.
> If this case went to a jury, I do not see how any reasonable jury could find in her favor on the remaining issue, because the ADA case had been conceded, so I am going to grant the defendant's motion for summary judgment….

*Id.* Butts then timely filed this appeal.  JA 344-45.


## SUMMARY OF ARGUMENT

When Lieutenant Colonel Dianne Butts returned to civilian life after

completing her active duty obligations USERRA required PWCS, her former

employer, to re-hire her in an appropriate "reemployment position" as defined by

that statute.  One of the statutory requirements is that the reemployment positon be

a position which the returning serviceperson is qualified to perform.  However,

immediately upon Butts' February 2009 employment by PWCS' as a substitute

teacher, it became apparent that, because of a psychological disability suffered

during her military service, Butts was no longer qualified to teach elementary

school students, her principal job responsibility when she had left the school

system.  Consequently, PWCS' contention, unsupported by this Court's case law,

that Butts was placed in an appropriate reemployment position when it hired her as

a permanent teacher in April 2009, relieving PWCS of any further obligation to comply with USERRA's rehiring provisions, is wrong—Butts' inability to teach was again evident from virtually the moment she started working and PWCS' efforts to requalify her as a teacher were manifestly unsuccessful.

Faced with Butts' inability to teach, USERRA required PWCS to reemploy her in another position for which she was actually qualified.  Nevertheless, instead of offering Butts a job she could do, for over a year PWCS stubbornly insisted that she do a teaching job that she could not do.  During PWCS' extended and fruitless efforts to requalify her as a teacher, Butts faced enormous pressure from her supervisors, who abundantly criticized her, threatened her with firing and subjected her to repeated "improvement" plans.  A reasonable factfinder could conclude that the stress arising from PWCS' insistence that she teach , instead of meeting its USERRA obligation to find her a job for which she was qualified, caused Butts' weakened mental state to deteriorate, until reaching the point where she could do no work of any sort.  Butts is entitled to damages for any harm caused to her by PWCS' USERRA violations.  Consequently, the district court's entry of summary judgment was erroneous.

9

# ARGUMENT

## I.    STANDARD OF REVIEW

Appellant seeks reversal of the district court's grant of summary judgment.

This court has explained that

> Whether a party is entitled to summary judgment is a question of law we review de novo using the same standard applied by the district court. *Canal Ins. Co. v. Distrib. Servs., Inc.*, 320 F.3d 488, 491 (4th Cir. 2003). Summary judgment is appropriate only if taking the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party, "no material facts are disputed and the moving party is entitled to judgment as a matter of law." *Ausherman v. Bank of Am. Corp.*, 352 F.3d 896, 899 (4th Cir. 2003).

*Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.… The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## II.    USERRA'S PROTECTIONS ARE INTERPRETED EXPANSIVELY

Congress enacted USERRA

> "to prohibit discrimination against persons because of their service in the uniformed services." 38 U.S.C.A. § 4301(a)(3). Accordingly, USERRA provides that "[a] person who is a member of . . . or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment

> by an employer on the basis of that membership . . . or
> obligation." 38 U.S.C.A. § 4311(a).

*Hill v. Michelin N. Am., Inc.*, 252 F.3d 307, 311 (4th Cir. 2001). Congress' intent

was to "to encourage noncareer service in the uniformed services by eliminating or

minimizing the disadvantages to civilian careers and employment which can result

from such service." 38 U.S.C. § 4301(a)(1). "Because USERRA was enacted to

protect the rights of veterans and members of the uniformed services, it must be

broadly construed in favor of its military beneficiaries." *Hill*, 252 F.3d at 312-13;

*see also Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 303 (4th Cir.

2006) (same); *accord, Alabama Power Co. v. Davis*, 431 U.S. 581, 584 (1977)

("This legislation is to be liberally construed for the benefit of those who left

private life to serve their country in its hour of great need") (quoting *Fishgold v.*

*Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 285 (1946))) (interpreting

USERRA's predecessor legislation).[3]

---

[3] As this court has noted,
> we can and should use relevant pre-USERRA case law as a guide
> toward understanding USERRA: "[i]n enacting USERRA, Congress
> ... emphasized that Federal laws protecting veterans' employment and
> reemployment rights for the past fifty years had been successful and
> that the large body of case law that had developed under those statutes
> remained in full force and effect, to the extent it is consistent with
> USERRA."

*Francis*, 452 F.3d 299 at 303 (quoting 20 C.F.R. § 1002.2 (2006)).

11

## III.   PWCS VIOLATED USERRA'S REEMPLOYMENT PROVISION

"USERRA provides a multi-tiered and comprehensive remedial scheme to ensure the employment and reemployment rights of those called upon to serve in the armed forces of the United States." *Francis*, 452 F.3d at 303 (quotations omitted). Section 4311 of the statute prohibits an employer from discriminating against an employee (or potential employee) because that employee "is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service." 38 U.S.C. § 4311(a). Sections 4312 and 4313 provide that, in most circumstances, "any person whose absence from a position of employment is necessitated by reason of service in the uniformed services," is, when their period of military service has ended, entitled to certain "reemployment rights," rights which are defined in the statute. § 4312(a). Section § 4311(b) contains an anti-retaliation provision which bars and employer from "tak[ing] any adverse employment action against any person because such person has taken an action to enforce a protection afforded any person under [USERRA], … or has exercised a right provided for in [USERRA]." *Francis*, 452 F.3d at 302 (quoting § 4311(b)) (alterations in original).

### A.   A Returning Employee Is Entitled to an Appropriate Reemployment Position

At issue in this case is USERRA's reemployment provision. Section 4312 provides that "any person whose absence from a position of employment is

12

necessitated by reason of service in the uniformed services shall be entitled to the reemployment rights and benefits" set out in USERRA if

> (1) the person … has given advance written or verbal notice of such service to such person's employer;
> (2) the cumulative length of the absence and of all previous absences from a position of employment with that employer by reason of service in the uniformed services does not exceed five years; and
> (3) … the person reports to, or submits an application for reemployment to, such employer in accordance with the provisions of [USERRA].

§ 4312(a). If these three criteria are met, as they have been in this case, and the returning employee has not been subject to a dishonorable or similar discharge, which is also the case here, reemployment is mandatory. *Petty v. Metro. Gov't of Nashville*, 687 F.3d 710, 716-17 (6th Cir. 2012); *see also* 38 U.S.C. § 4304(a) (if departure from service was because of a "dishonorable or bad conduct discharge" USERRA protection inapplicable).

USERRA's § 4313 provides detailed rules for determining the appropriate "[r]eemployment position[]"—the position at which the returning employee is entitled to permanent rehire. The statutory default rule is that the reemployment position is what is commonly referred to as the employee's "escalator" positon— "the position of employment in which the person would have been employed if the continuous employment of such person with the employer had not been interrupted by such service," provided that the employee is qualified or can be reasonably

13

made qualified for the escalator position.[4]  § 4313(a)(2)(A).  Alternatively, if the employee was on military duty for more than 90 days (as was the case here), the employee may designate the reemployment position to be "a position of like seniority, status and pay" to the elevator position.  § 4313(a)(2)(A).  If, however, the returning employee is not qualified for the escalator position, and cannot reasonably be made qualified for that position, special rules determine the appropriate reemployment position.[5]

If, as in this case, the reason that the employee is not qualified and cannot be reasonably made qualified for the escalator position is because of "disability incurred in, or aggravated during, [the employee's military] service" then the

---

[4] *See* 20 C.F.R. § 1002.191 ("As a general rule, the employee is entitled to reemployment in the job position that he or she would have attained with reasonable certainty if not for the absence due to uniformed service.  This position is known as the escalator position.").

[5] As the applicable regulations explain,

> In all cases, the starting point for determining the proper reemployment position is the escalator position, which is the job position that the employee would have attained if his or her continuous employment had not been interrupted due to uniformed service.  Once this position is determined, the employer may have to consider several factors before determining the appropriate reemployment position in any particular case.  Such factors may include the employee's length of service, qualifications, and disability, if any.  The reemployment position may be either the escalator position; the pre-service position; a position comparable to the escalator or pre-service position; or, the nearest approximation to one of these positions.

20 C.F.R. § 1002.192.

reemployment position is "any other position which is equivalent in seniority, status, and pay" to the escalator position. § 4313(a)(3)(A). If, however, an employee with a service related disability is not qualified and cannot reasonably be made qualified for either the escalator position or an "equivalent" position the reemployment position is "the nearest approximation to a position" equivalent to the escalator position that the employee is qualified for or can reasonably be made qualified for. § 4313(a)(3)(B); *see also* 20 C.F.R. § 1002.25 (setting out order of priority for determining reemployment position for individuals with service-related disabilities).

Slightly different rules, modestly less favorable to the returning employee, apply if a service-connected disability is not the reason that the employee is not qualified, and cannot be reasonably made qualified, for the escalator provision. In such cases the reemployment position is normally the employee's position prior to her departure for military service. § 4313(2)(B) (reemployment in such cases must be "in the position of employment in which the person was employed on the date of the commencement of the service in the uniformed services."). If, however, the employee is not qualified for, and cannot reasonably be made qualified for, either the escalator provision or the employee's pre-departure position than the employee must be reemployed "in any other position which is the nearest approximation to" either the escalator position or, if that is not possible, to the pre-departure position,

15

for which the employee is qualified or can reasonably be made qualified. § 4313(a)(4); *see also* 20 C.F.R. § 1002.197 (order of priority for determining reemployment position).

*Hembree v. Georgia Power Co.*, 637 F.2d 423 (5th Cir. Unit B 1981) illustrates how an employer must deal with a disabled employee under USERRA. In that case, "while serving in active duty, plaintiff sustained an injury which left him functionally blind in one eye." *Id.* at 425. Because of this disability the employee could not return to work as an apprentice electrician, which would have otherwise been the appropriate reemployment position. *Id.* at 428. Nevertheless, despite this disability the employer was required to rehire its former employee at "the nearest approximation" of an apprentice electrician position "consistent with the circumstances" of the individual's disability. *Id.* at 427.

### B.    Butts was Never Rehired in an Appropriate Reemployment Position

Butts was never reemployed in an appropriate reemployment position. A factfinder could readily conclude that Butts was not qualified to return to the full time teaching position following her return from service. Butts' problems were evident immediately upon her return to the school system's employ. Although she had been an effective instructor before departing for the military, this was not the case when she returned, having suffered psychological trauma during her overseas

16

deployment.  Although PWCS attempted to correct the deficiencies in Butts' performance these efforts were clearly ineffective.

When Butts initially returned PWCS as a teacher in February 2009 her performance was so deficient that she was effectively fired after less than a week on the job.  JA 65-66 (Facts ¶ 9).  PWCS found her another teaching job in April 2009, but her superiors immediately noted that, in her teaching, she used "methodologies [that] were ineffective and sometimes incorrect" and that her lessons often left her students "more confused" about the subjects she taught than when she began her instruction.  JA 68 (Facts ¶ 16).  After less than two months on the job she was again effectively fired by the principal of her new school.  JA 68-69 (Facts ¶ 18).

Consequently, by at least the end of the 2008-09 school year there was compelling evidence that Butts was not qualified, and had never been qualified, to return to her original position as a teacher, and that she could not be made qualified for that position with reasonable efforts.  She was also manifestly unqualified for an elevator position.  Under these circumstances PWCS' USERRA obligation was clear—PWCS needed to hire her for the "the nearest approximation" to her pre-service position that she was "qualified to perform."  20 C.F.R. § 1002.197.  It is undisputed that PWCS had a variety of other non-teaching positions, but no such position was offered to Butts.  JA 328-29.

17

Instead, PWCS, continued to try and force a round peg into a square hole. Despite her obvious inability to teach, at the beginning of the 2009-10 school year Butts was assigned to a third teaching job at a third elementary school. She was never offered or assigned to a non-teaching job which she might have been able to perform.

### C.     Nothing in *Francis v. Booz, Allen & Hamilton, Inc.* is to the Contrary

At the district court PWCS argued that, notwithstanding the language in USERRA and its accompanying regulations indicating the contrary, that under *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299 (4th Cir. 2006), PWCS had met its reemployment obligations the moment it rehired Butts as a teacher. According to PWCS the fact that she was not qualified to do that job is irrelevant. That is not a proper reading of *Francis*.

Relying on long-accepted rules of statutory construction, *Francis* explained how USERRA must be interpreted:

> "The first step in determining the meaning of a statute is to examine the statute's plain language. In doing so, we look at 'the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.'" *United States v. Andrews*, 441 F.3d 220, 222 (4th Cir. 2006) … (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 … (1997)). USERRA provides a multi-tiered and "comprehensive remedial scheme to ensure the employment and reemployment rights of those called upon to serve in the

18

armed forces of the United States." *Morris-Hayes v. Bd. of Educ.*, 423 F.3d 153, 160 (2d Cir. 2005) …. We analyze this comprehensive scheme holistically, careful to interpret each section in a manner that does not render any other sections inconsistent or superfluous.

*Id.* at 303.

The plaintiff in *Francis* was a computer technician. After an active duty military deployment she was rehired by her civilian employer, "retain[ing] the same title, salary, consulting engagement, and work location upon her return" as she had prior to her deployment. *Id.* at 301. Her duties were also essentially the same as they had been previously.[6] *Id.* at 306. There was no suggestion that Francis had become disabled during her deployment or had otherwise become unqualified to perform her job duties.

In contrast to Butts' situation, prior to her deployment Francis engaged in conduct that her employer "found unprofessional and for which Francis was formally reprimanded several times." *Id.* at 301. Her performance issues continued after her return—among other things she left work early without permission and slammed down the phone after calls to customers. *Id.* at 302. She was ultimately terminated because of her misconduct. *Id.*

---

[6] Plaintiff pointed to some changes in her duties but these were "extremely slight and simply a continuation of her pre-deployment work patterns" and were "a direct result of the change in [a third party] contract, and applied to all employees in Francis' position." *Id.* at 306.

19

Francis argued to the Fourth Circuit that her employer's conduct violated several provisions of USERRA, including § 4312's requirement that a returning employee be rehired. *Id.* at 302. In a phrase Appellee here highlighted to the court below, the Fourth Circuit found that § 4312 "only entitles a service person to immediate reemployment and does not prevent the employer from terminating him the next day or even later the same day." *Id.* at 304. Since Francis had been employed in a proper reemployment position the *Francis* defendant had met its obligation under § 4312, meaning that Francis' claim needed to be adjudicated under either § 4311, which prohibits discrimination against military personnel, or § 4316(c), which requires that, for a certain period of time, any dismissal of a returning USERRA-protected employee must be for cause. *Id.* at 305-10. Neither of these provisions are relevant to Butts' claim.

*Francis* does not, as Appellee insists, stand for the proposition that the moment a returning military person is reemployed in ***any*** position the employer has met it obligations under the reemployment prong of the statute. For an employer to discharge its § 4312 and § 4313 obligations it must rehire the employee not in any position, but in a proper reemployment position. *Francis* does not explicitly say this only because this was not an issue in that case—there was no dispute that Francis had been placed in a proper reemployment position. Under the circumstances of the present case, however, it would hardly be consistent with this

20

Circuit's "holistic" view of USERRA statutory analysis to ignore § 4313 (entitled "Reemployment Positions") and the explanation of what is a proper reemployment provision set out therein.

The text of § 4313 also makes clear Congress' view that, as was the case when Butts was rehired, it will sometimes not be immediately apparent what a returning employee's proper reemployment position might be. For example, § 4313(b) provides that the employee's previous position, rather than the escalator position, can be deemed the reemployment position only after "reasonable efforts by the employer to qualify the person" for the escalator position have been unsuccessfully attempted. § 4313(a)(2)(B). Similarly, an employer must make "reasonable efforts" "to accommodate the disability" of any person with a service related disability before determining that that person is not qualified to fulfill the escalator provision. § 4313(a)(3). In the view of USERRA's drafters, a proper reemployment position can never be a position for which the returning employee is not qualified, even, as was the case with Butts, if that lack of qualification is not evident at the moment of rehire.

### D.     A Factfinder Could Reasonably Conclude that PWCS Caused Butts' Inability to Work

It is undisputed that, by the end of her employment by PWCS Butts had become completely disabled, unable to work in any position. PWCS argued, and

21

the district court apparently agreed, that Butts was entitled to no damages, regardless of any role PWCS had in causing Butts' inability to work. Consequently, according to PWCS, no relief was available to Butts and her claim must be dismissed. But this is not the law.

First of all, even if PWCS is correct that Butts was paid all wages due her through the date at which she became fully disabled this would not settle the matter—USERRA permits not only the award of back wages, but also of liquidated damages and attorneys' fees. 38 U.S.C. § 4323(d). At a minimum Butts was entitled to a determination as to whether she was entitled to such additional relief.

Furthermore, the trial court ignored Butts' principal argument—that her inability to work was the result of PWCS' continued efforts to force her to do something she was no longer capable of doing—work as an elementary school teacher. *See* JA 209; *id.* at 253-54; *id.* at 231; *id.* at 272-74; *id.* at 285-87; *id.* at 289. Of course, to survive Defendant's motion for summary judgment Butts was not required to prove that PWCS proximately caused her inability to work, only that a reasonable factfinder could accept her argument on causation.

USERRA provides that "[t]he court may require the employer to compensate the [plaintiff] for any loss of wages or benefits suffered by reason of such employer's failure to comply with the provisions of this chapter." 38 U.S.C. § 4323(d)(1)(B); *see also Hamovitz v. Santa Barbara Applied Research, Inc.*, 2:07-

22

cv-0454, 2010 U.S. Dist. LEXIS 110937, at *5 n.2 (W.D. Pa. Oct. 19, 2010) ("Under the USERRA, the District Court may use its full equity powers and award compensatory damages for lost wages or benefits."). While it may be unusual, Butts' argument is entirely proper. Butts asserts that PWCS failed to reemploy her in a proper reemployment position, instead insisting that she perform the job of a classroom teacher, a job she was clearly not capable of doing. PWCS' insistence that she work as a teacher, and not in a position for which she was actually qualified, caused Butts to suffer enormous stress, worsening her psychological position to the point where she could not perform any work. But for PWCS' conduct she could have continued working, albeit not as a teacher. In other words, PWCS' violation of USERRA was the proximate cause of Butts' inability to work. If she can prove her theory she is entitled to receive as damages those wages she would have received but for PWCS' improper conduct and she may also be entitled to receive attorneys' fees and additional liquidated damages. The district court's refusal to let this case reach a factfinder was error.

*Montoya v. Orange County Sheriff's Dep't*, SACV 11-1922, 2014 U.S. Dist. LEXIS 160414 (C.D. Cal. Nov. 13, 2014), is instructive. The defendant in that case violated USERRA by subjecting the plaintiff to a hostile work environment on account of the plaintiff's prior military deployment. *Id.* at *2. The *Montoya* plaintiff had suffered psychological injury during the course of his military service,

including PTSD. *Id.* at *9. The court found, however, that "the hostile work environment at [the Orange County Sheriff's Department] exacerbated Plaintiff's PTSD symptoms rendering him unable to work through the time of trial." *Id.* at 12. Consequently, the court found that "there is sufficient evidence to support the conclusion that [the defendant's] hostile work environment was a but-for cause of PTSD severe enough to render Plaintiff unemployable at the time of trial…. [T]his factual finding is sufficient to permit an award of front pay." *Id.* at 18.

This case, of course, is not a hostile workplace claim in the same sense as was the case in *Montoya*. But in *Montoya*, as in this case, the plaintiff suffered psychological injury while in military service. That injury was exacerbated by conduct of a defendant which violated USERRA, rendering the plaintiff unable to work anywhere in any capacity. Because the *Montoya* plaintiff's complete inability to work was caused by the defendant's conduct the defendant was liable to the plaintiff for the wages plaintiff would have earned but for defendant's conduct. In that sense the situation in *Montoya* is identical to the situation in this case.

## **CONCLUSION**

For the foregoing reasons, this Court should reverse the district court's grant of summary judgment and remand this case for trial.

24

## <u>REQUEST FOR ORAL ARGUMENT</u>

This case raises important issues regarding the interpretation of USERRA.

Oral argument is requested.

Dated:        November 20, 2015        Respectfully submitted,

  /s/Matthew B. Kaplan
Matthew B. Kaplan
D.C. Bar No. 484760
The Kaplan Law Firm
509 N. Jefferson St.
Arlington, VA 22205
Telephone:  (703) 665-9529
Fax:  (888) 958-1366
Email: mbkaplan@thekaplanlawfirm.com
*Counsel for Appellant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the date indicated below the foregoing (including any appendix or other accompanying documents) was filed electronically through the Court's CM/ECF system.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.

Kristi Lynette Johnson
Mary McGowan
BLANKINGSHIP & KEITH, PC
Suite 300
4020 University Drive
Fairfax, VA 22030
Direct: 703-691-1235
Email: kjohnson@bklawva.com
Email: mmcgowan@bklawva.com

  /s/Matthew B. Kaplan
Matthew B. Kaplan

Date: November 20, 2015